No. 51,997

COUNTRY CLUB HOME, INC., and LAWRENCE SOWERS as ADMINISTRATOR, *Appellee,* v. ROBERT C. HARDER, as SECRETARY OF SOCIAL AND REHABILITATION SERVICES, *Appellant.*

(620 P.2d 1140)

Opinion filed December 6, 1980.

*Bruce A. Roby,* for State Department of Social and Rehabilitation Services, argued the cause and was on the briefs for the appellant.

*T. Richard Liebert,* of Liebert & Liebert, P.A., of Coffeyville, argued the cause and was on the brief for the appellee.

*Robert A. Coldsnow* argued the cause and was on the *amicus curiae* brief for the Kansas Legislative Coordinating Council.

The opinion of the court was delivered by

FROMME, J.: This is an action brought by and on behalf of licensed nursing home facilities in the State of Kansas to obtain a declaratory judgment declaring certain regulations of the Kansas Department of Social and Rehabilitation Services invalid. These nursing home facilities rendered care and services under cooperative state-federal institutional care programs. The regulations of the Kansas Department of Social and Rehabilitation Services (formerly the State Board of Social Welfare of Kansas) being attacked are those for the period from July 1, 1971, to February 29, 1980.

This declaratory judgment action is authorized by K.S.A. 77-434 in which it is stated:

"The court shall declare the rule and regulation invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without substantial compliance with statutory rule-making procedures."

The action was filed on June 6, 1973, attacking regulations passed to implement federal social security programs authorized by K.S.A. 1971 Supp. 39-708(x) and amendments. The statute, effective July 1, 1971, provided:

"The state board shall take such action as may be necessary to assure that

persons, firms and corporations selling property or providing services and licensed practitioners, within the scope of their practice as defined by state law who provide professional services under the provisions of the federal social security act, *shall be paid reasonable charges.* Payment for other medical assistance under the provisions of the federal social security act shall be reasonable charges: *Provided, however,* That if such payments are otherwise limited by federal law, such payments shall be as near the reasonable charges as may be permitted by federal law." Emphasis supplied.

Since the original petition was filed over seven years ago the plaintiffs have filed both an amended petition and an amendment to the amended petition in an effort to keep abreast of changes in the statute and regulations implementing the medicaid program. Changes have occurred annually in both the statute and the regulations. The decision from which this appeal was taken has been delayed and complicated by the further fact that no less than three judges have presided over portions of the proceedings before a fourth judge was assigned to Morris County to complete the case. Before the assignment of the fourth judge, the case had been set for trial twice and continued each time. The present judgment appealed from was entered February 29, 1980. The judgment pertains solely to the first claim set forth in the amended petition. The second claim in the amended petition has not been tried by the lower court. In the second claim plaintiffs seek recovery in a class action for payments alleged to be due by reason of payments claimed to have been withheld in violation of law. The second claim remains for later trial, assuming plaintiffs are successful in this first claim. The sole decision to be reached in this appeal concerns the validity of the regulations of the former State Board of Social Welfare and of its successor, the present Department of Social and Rehabilitation Services of Kansas, covering the period of time from July 1, 1971, to February 29, 1980.

The provisions of K.S.A. 1971 Supp. 39-708(*x*) and amendments were passed by the legislature to implement certain grants-in-aid available to the states under the provisions of the federal Social Security Act, Public Law 92-603, § 249, 42 U.S.C.A. § 1396a(a)(13)(E). This law requires that a plan be submitted by the state agency and that it be approved by the Secretary of Health, Education and Welfare to conform to the requirements of the Social Security Act. Effective May 4, 1980, the federal Department of Health, Education and Welfare was

redesignated the Department of Health and Human Services. Public Law 96-88, § 509(a). For purposes of this opinion we are concerned only with the time the Department and Secretary of Health, Education and Welfare (HEW) remained in existence.

Under these grant-in-aid programs, such as medicaid, payments are made by the designated state agency to nursing home facilities which have provided nursing care and medical services to qualified beneficiaries. The money for the payments comes from both state and federal sources and is to be paid in accordance with an approved plan. The federal Social Security Act requires that plans provide for reimbursement to both skilled nursing facilities and intermediate care facilities "on a reasonable cost related basis," as determined in accordance with methods and standards which shall be developed by the state on the basis of "reasonable cost-finding methods" approved and verified by the Secretary of HEW.

The federal Social Security Act consists of several enactments under which the federal government makes funds available to the states for the care of various categories of needy individuals. The section of the federal statute with which we are concerned is Title XIX (Medicaid) (Grants to States for Medical Assistance Programs) for indigent aged persons. 42 U.S.C.A. §§ 1396 *et seq.*

On appeal the Secretary of Social and Rehabilitation Services of Kansas, appellant herein, attacks the integrity and impartiality of the district judge assigned to hear this complicated and long-delayed case. The Secretary launches a personal attack against the trial judge and his procedural orders. It is alleged the judge acted indecisively in first ordering a change of venue from Morris County to Shawnee County and later rescinding the order. It is suggested the proceedings are "perhaps invalid as a matter of venue and jurisdiction." It is alleged the judge blatantly and retroactively violated, abused and changed the pretrial order causing obvious and manifest injustice to the appellant. It is alleged the conduct of the judge indicated a friendliness toward the plaintiffs and a preconceived bias toward the defendant-appellant. It is further alleged the judge failed to timely rule on defendant's motion for summary judgment and failed to consider the full record stipulated by the parties.

According to the transcript of the pretrial hearing and the pretrial order, which the defendant-appellant prepared, the trial

court on application for a change of venue granted the change on condition that the files not be transferred from Morris County to Shawnee County until or unless judgment was granted for the plaintiffs on the declaratory judgment aspects of the case. At a later time this order changing venue was revoked.

The pretrial order segregated the declaratory judgment aspect of the case and determined that it should be decided first. The order noted that both parties had motions for summary judgment pending but the court declined to decide them at that time. The court indicated that:

"[T]he issues to be decided in the declaratory judgment aspect is whether the regulations (of the present defendant, the Secretary of Social and Rehabilitation Services of Kansas, for the payment of nursing home facilities for their performed services in the Title XIX Social Security plan in Kansas which plan is administered by the State Department of Social and Rehabilitation Services of Kansas) properly comply with the enabling state and federal statutes and federal regulations for the period beginning on July 1, 1971, and ending on the date of the declaratory judgment."

The pretrial order further provided there was no question concerning the procedure by which the regulations were adopted by the department and it was agreed the plaintiffs had exhausted the necessary administrative procedures necessary for a ruling on a declaratory judgment. The court ruled that the members of the class, for the purpose of determining the declaratory judgment phase of the litigation, are all the nursing facilities licensed in Kansas, excepting therefrom those that had opted out. It further ordered, in the event plaintiffs obtain a declaratory judgment holding the regulations invalid, that the members of the class entitled to recover and the extent of their recovery are left completely open for later determination. In the pretrial order the record upon which the declaratory judgment was to be made was determined to be the pertinent Kansas statutes and regulations, the pertinent federal statutes and regulations, the depositions previously taken, the transcript of the pretrial hearing, together with the pleadings, interrogatories, affidavits, and admissions of record. It was further ordered that the affidavit of William Newman, head of the Department of Medical Services, dated March 21, 1975, be filed as part of the record and be brought up to date. These affidavits concern the cost reimbursement design and method of payment employed by the department. In the order it was determined that upon the filing of this factual information

there would be no need for oral testimony to be taken for the adjudication of the declaratory judgment. The order stated that the procedure for adjudication would be to require the parties to submit to the court their respective proposed findings of fact and conclusions of law with the references to statutes, regulations and the record. The court would study the same and enter the declaratory judgment.

In the transcript of the pretrial hearing the following colloquy occurred among court and counsel:

"THE COURT: So, a ruling on the declaratory phase of this, in effect, decides both motions for summary judgment. Isn't that right?

"MR. ROBY [counsel for defendant]: Of course, the purpose of the summary judgment would be to avoid the necessity of going through—

"MR. DesJARDINS [co-counsel for defendant]: Trial.

"MR. ROBY:—the presentation and the trial itself. So, if we go to the trial, it's the same as overruling both motions for summary judgment.

"THE COURT: Sure, sure. What I'm thinking, what do I need to make a determination as to the declaratory judgment part? I need the Kansas statutes involved; I need the SRS regulations as they have varied through the period of years; I need the federal statutes pertinent, Title 19; I need any federal regulations that are pertinent; I need maybe what Dick calls the array. And I don't like that word, because I don't know what he means by it, and later he's going to have to tell me what he means by it so I know what's needed in that area. But it seems to me that's all I need to determine the declaratory judgment part.

"MR. DesJARDINS: Looking at it that way, Your Honor, and with what Mr. Liebert has previously said about these individual homes, I think the Court is correct. And I'm not sure the Court would even require any testimony if we can agree as to the statutes, the regulations and the pertinent federal regulations and statutes. I think the Court is correct, since we're not going into individual homes and using those as keys or by standards. I think it can be presented to the Court that way.

"THE COURT: I don't think the individual homes has anything to do with this lawsuit at this time.

"MR. DesJARDINS: No. Doing it that way, I don't even think the Court needs testimony.

. . . .

"THE COURT:  . . .  Okay, no question but what this case is a court case rather than jury case, is there?

"MR. DesJARDINS: No question.

. . . .

"MR. ROBY: So you'll understand, that accounting is about four or five years out of date.

"MR. LIEBERT [counsel for plaintiff]: That affidavit does relate to the cost reimbursement design that's in the present regulation, but there have been amendments to details that are not covered in that affidavit. So that the question would be whether we would have the man in person appear and update that or whether we would do it in writing, either way.

"THE COURT: What—
"MR. DesJARDINS: We can do it in writing."

It is apparent from the transcript of the pretrial hearing and the pretrial order prepared by defendant-appellant that all parties acquiesced in the procedure to be followed in presenting the case for decision of the court. When a pretrial order is agreed on by the parties and followed by the trial court in deciding the issues as set forth in the order, the parties have acquiesced therein and cannot enlarge those issues on appeal. Such an order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. K.S.A. 60-216; *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 442, 581 P.2d 372 (1978). We have examined the record of the case and find the personal attack of the Secretary against the trial judge is unjustified and in poor taste. Obviously the charges of bias, prejudice and manifest injustice come more as a result of the adverse decision than from any improper action on the part of the judge.

The charge that the proceedings are "perhaps invalid as a matter of venue and jurisdiction" is without basis in fact. Under K.S.A. 77-434 venue is with the district court of the county in which the plaintiff resides or has a principal place of business. That is Morris County in this case. The allowance or refusal of an application for a change of venue rests largely in the discretion of the trial court under K.S.A. 60-609. *Fredricks v. Foltz,* 221 Kan. 28, 33, 557 P.2d 1252 (1976). We fail to see any abuse of discretion by the court or prejudice to appellant by the refusal to change venue.

We turn now to the primary questions raised on appeal. The trial court declared all of the regulations pertaining to reimbursements to nursing homes under Title XIX of the Social Security Act, adopted by the Department of Social and Rehabilitation Services, invalid as being contrary to law for failure to fulfill the statutory requirement of paying reasonable charges. The trial court's principal bases for its decision were (1) the limitation of prospective payments for long term nursing home care depending on the amount of funds appropriated by the state, (2) refusal of the agency to provide for a reasonable profit for the owner, and (3) refusal of the agency to permit attorney fees and costs expended in this and similar actions to be allowed as costs

related to patient care and recovered as reimbursable costs for nursing services.

At the outset we should be mindful of the following rules. A court may not substitute its judgment for that of the Secretary of Social and Rehabilitation Services in determining which method is preferable to determine a reasonable cost-related basis for reimbursing long term care facilities; a court should not intrude into areas of administrative discretion, and it must protect the director's right to select among effective options. *Brinson v. School District,* 223 Kan. 465, 469, 576 P.2d 602 (1978); *Marks v. Frantz,* 179 Kan. 638, 642, 298 P.2d 316 (1956); *American Health Care Ass'n, Inc. v. Califano,* 443 F. Supp. 612 (D.D.C. 1977). A rebuttable presumption of validity attaches to actions of administrative agencies; the burden of proof rests with the party or parties challenging the action of an administrative agency. *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388 (5th Cir. 1980); *Hiatt Grain & Feed, Inc. v. Bergland,* 446 F. Supp. 457, 479 (D. Kan. 1978), *aff'd* 602 F.2d 929 (10th Cir. 1979).

A state is not obligated to participate in the medicaid program; however, once it has voluntarily elected to participate, the state must comply with federal standards. Social Security Act § 1902(a)(13)(E) as amended 42 U.S.C.A. § 1396a(a)(13)(E); *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388. A state plan for medical assistance must provide for payment for skilled nursing facility and intermediate care facility services provided under the plan on a reasonable cost-related basis, as determined in accordance with methods and standards which are developed by the state on the basis of cost-finding methods approved and verified by the Secretary. 42 U.S.C.A. § 1396a(a)(13)(E). Such plan must provide such methods and procedures relating to the utilization of, and the payment for, care and services made available under the plan to assure that payments are not in excess of reasonable charges consistent with efficiency, economy, and quality of care. 42 U.S.C.A. § 1396a(a)(30).

In light of the above federal law we now turn to the state regulations under attack.

In order to examine the validity of the state regulations which cover a period of almost nine years they must be separated into three time periods because of the changes in both the state regulations and the statutes.

The first time period runs from July 1, 1971, to July 28, 1972. The state regulation then in effect was K.A.R. 30-5-27 (1971). It provided:

"The fee for payment for levels of care in adult care homes shall be based upon the home's *cost plus a reasonable profit* which fee shall be determined by cost and other data submitted by the home as required by the department so that such fee for skilled nursing home services for patients qualifying for title XIX benefits *shall be the reasonable, usual and customary charges for such home as determined by the above method."* Emphasis supplied.

In *Seneca Nursing Home v. Kansas State Bd. of Social Welf.,* 490 F.2d 1324 (10th Cir.), *cert. denied* 419 U.S. 841 (1974), the Tenth Circuit Court of Appeals affirmed the declaratory judgment entered in the trial court, holding that the nursing homes were entitled to payment under K.S.A. 1970 Supp. 39-708(x) according to the standard of "reasonable, usual and customary charges." This covered the period of time up to July 1, 1971. Recovery of the differences between what had been actually paid and reasonable, usual and customary charges was authorized.

In our present case K.A.R. 30-5-27 (1971), which remained in effect after July 1, 1971, required payments of the reasonable, usual and customary charges. In the deposition of William Newman there was undisputed testimony that the usual and customary posted charges of the nursing homes were not paid in all cases. He further testified that the amount of the payments to nursing homes was not determined on a reasonable cost-related basis.

In *Rhodes v. Harder,* 211 Kan. 820, 508 P.2d 959 (1973), a declaratory judgment was sought to determine the validity of certain administrative action taken by the Social Welfare Department. The department by administrative regulation K.A.R. 30-5-29 (1969) attempted to authorize the department to prorate payments for medical services rendered to welfare recipients. A reduction of a flat 25 percent was ordered. This court held such action exceeded statutory authority of the State Director of Social Welfare. The regulation and the administrative action were held to have been taken without any legal authority and in violation of the federal statutes relating to Title XIX programs.

We see no conflict or invalidity by reason of the mere wording of the state and federal statutes and regulations for the period from July 1, 1971, to July 28, 1972, but the state agency during that period failed to comply with the plan entered into with the

Department of HEW, which plan incorporates the federal statutory requirements. The department failed to provide a schedule for reimbursements based on some reasonable cost-related method as required by 42 U.S.C.A. § 1396a(a)(13)(E). We conclude the failure of the state agency to implement the federal statutory requirements by administrative action, so as to provide some reasonable cost-related method to determine usual, customary and reasonable rates of nursing home reimbursements, rendered K.A.R. 30-5-27 (1971) and the administrative action taken to be without any legal authority. The nursing homes were entitled to their reasonable, usual and customary charges for such services during this period.

We turn next to the period from July 28, 1972, to May 1, 1978. K.S.A. 1972 Supp. 39-708(x), as interpreted by the attorney general's opinion and as later amended, directed payment of "reasonable charges." During this period K.A.R. 30-5-27 (1972), K.A.R. 30-9-12 (1973), and later amendments limited the amount of the charges and payments by making them subject to a limitation of the funds made available under state appropriation statutes. The 1972 regulation K.A.R. 30-5-29, provided that "[s]hould funds for each fiscal year prove inadequate to meet all costs on the basis of fees and charges adopted, payment to the providers will be made on a proration or discount basis." The 1973 regulation provided that "reasonable charges will also be determined by the amount of funds made available under state law to pay such charges." The 1974 regulation contained an almost identical provision limiting payments. The 1975, 1976, and 1977 regulations all provided for limitations on reimbursements to nursing home facilities and intermediate care facilities to be determined by the amount of the appropriation made available by the Kansas legislature. See K.A.R. 30-10-12 for those particular years.

Inadequate funding does not excuse failure of a state to comply with federal standards, and there is no provision, express or implied, in the Social Security Act permitting a state to alter federal standards to suit the state's budgetary needs. *Alabama Nursing Home Ass'n v. Califano,* 433 F. Supp. 1325, 1330 (M.D. Ala. 1977); *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d at 396; *State of Fla. v. Mathews,* 526 F.2d 319, 326 (5th Cir. 1976); *Rodriguez v. Vowell,* 472 F.2d 622, 624 (5th Cir.), *cert. denied* 412 U.S. 944 (1973); *Reyna v. Vowell,* 470 F.2d 494, 496 (5th Cir. 1972).

As has been pointed out a state is not obligated to participate in the medicaid program but when it voluntarily elects to do so the state must comply with federal standards. The Social Security Act requires any state plan to provide payment for these services on a reasonable cost-related basis. This requirement does not enable a state to prorate costs incurred for such services. To permit this would allow the state to circumvent its previous guarantee of reasonable cost-related reimbursements under the medicaid program by failing or refusing to take necessary steps to ensure adequate funding of the program's projected expenditures. Social Security Act, § 1902(a)(13)(E) as amended 42 U.S.C.A. § 1396a(a)(13)(E).

The regulations of the Kansas Department of Social Welfare, now the Department of Social and Rehabilitation Services, for the period of July 28, 1972, to May 1, 1978, relating to charges for adult nursing home services under Title XIX, were invalid as an attempt to alter federal standards set in the Social Security Act to suit the department's budgetary needs. During this period the nursing homes were entitled to be reimbursed their reasonable charges consistent with efficiency, economy, and quality of care without proration or discount because of the level of state funding.

We will next consider the final period from May 1, 1978, to February 29, 1980. K.S.A. 1978 Supp. 39-708c($x$) became effective July 1, 1978, and provided:

"The secretary shall establish payment schedules for each group of health care providers. Any payment schedule established by the secretary shall be based, as appropriate, on either reasonable charges, reasonable costs or prospective rates and shall be subject to the federal social security act and state law and to rules and regulations adopted under said act and such law. The secretary, on an annual basis, shall review any payment schedule established under this section with representatives of the appropriate group of health care providers and with representatives of recipient advocate groups."

Under the federal regulations adopted in 1976 and later amended, the Department of Health, Education and Welfare required a state medicaid agency to pay for long-term care facility services on a reasonable cost-related basis. 45 C.F.R. § 250.30 (1976). Payment rates could not be set lower than rates the agency could reasonably find were adequate to reimburse in full the actual allowable costs of a facility that was economically and

efficiently operated (42 C.F.R. § 447.302[b] [1978]). The agency may not pay more for long-term care facility services than the provider's customary posted charges. 42 C.F.R. § 447.315(a) (1978).

The Secretary of HEW approved and adopted the following additional rules and regulations on February 1, 1978, as shown in the Federal Register, Vol. 43, No. 25, pp. 4862, 4863:

"1. An individual facility's reasonable cost related payment rate may (although it need not) be set in a manner that affords an opportunity for profit. . . .
. . . .
"2. 'Reasonable cost related' payment rates must, at a minimum, be high enough to cover the allowable costs of an efficiently and economically operated facility. . . .
. . . .
"3. It is appropriate to set a ceiling on 'reasonable cost related' payment rates. . . .
. . . .
"4. States should be allowed greater flexibility to experiment in developing methods of determining reasonable cost related payment rates."

These regulations further provide for ceilings and floors on reasonable cost-related payment rates as follows:

"The minimum reasonable cost related rate is the rate which the State reasonably finds (or, in the case of a prospectively determined rate, the level which the State reasonably expects) to be adequate to reimburse in full the allowable cost of a provider facility that is economically and efficiently operated. Thus, a provider facility's payment rate may not be lower than the level the State finds or expects to be adequate to reimburse the costs of that facility (where payment rates are set on a facility-by-facility basis) or of some provider in the class (where payment rates are set on a class basis) if that facility were operated as efficiently and economically as possible.

"The maximum reasonable cost related rate in a prospective rate-setting system is the highest costs the individual provider (where rates are set on a facility-by-facility basis) or the highest cost provider in the class (where rates are set on a class basis) can reasonably be expected to incur, and which would be found reasonable if incurred. The maximum reasonable cost related rate in a retrospective rate-setting system is the amount which would be determined using the Medicare principles of provider reimbursement. In addition, all payment rates, whether set prospectively or retrospectively, are subject to any general payment limits established by the Secretary under sections 1861(v) and 1866 of the Social Security Act, as amended by section 223 of Pub. L. 92-603, and under implementing regulations at 42 CFR 405.460-405.461." Federal Register at 4862.

The judgment entered by the trial court on February 29, 1980, contains basic findings, relating to the regulations and methods of administering the Title XIX plan for the period ending De-

cember, 1975. The judgment omits findings with reference to the 1976 and 1977 regulations although they were held to be invalid. The trial court held the regulations, K.A.R. 30-10-12 B 4a (5) for 1978 and 1979 were invalid because: (1) The payments approved therein failed to include an item for a return on the owner's investment, (2) the regulations approved a ceiling limit on payments for services arrived at by use of percentiles not properly explained or defined, and (3) the regulations do not recognize legal fees and court costs as allowable costs in the payment structure for reimbursement of charges for nursing home services.

The regulations adopted and in effect for the period from May 1, 1978, to February 29, 1980, with reference to reasonable cost-related reimbursements for long-term nursing care cover over twelve pages of the book containing the Kansas Administrative Regulations. K.A.R. 30-10-12 and 30-10-13 (1978). The objectionable features of the prior regulations, which limited the amount of payments to be made to those funds which might be available or appropriated, were removed from the regulations effective May 1, 1978.

The 1978 regulations state:

"1. Facilities with a current written provider agreement will be paid on a reasonable costs related basis for services furnished to eligible beneficiaries." K.A.R. 30-10-12-A-1 (1978).

"(5) Rate(s) for existing facilities—The agency shall, at least annually, on the basis of the cost information supplied by the provider and retained for cost auditing, determine per diem rates. The agency will compare the cost information for each provider with other providers similar in size, scope of service and other relevant factors to determine the allowable cost per diem rate. To the allowable cost per diem rate the agency will add a factor for inflation and *may add a factor for profit* . . . . The agency may establish payment rate structures to be limited by percentile maximums based on the cost information supplied by the providers." K.A.R. 30-10-12B-4-a (5) (1978). Emphasis supplied.

K.A.R. 30-10-13-B (1978) sets out detailed instructions as to required financial data, cost reports, and record keeping necessary to permit adequate cost data and cost finding, and authorizes:

"4. Depreciation—Allowance for depreciation based on asset costs. An appropriate allowance for depreciation on buildings and equipment is an allowable cost. . . .

. . . . .

"5. Interest expense. Necessary and proper interest on both current and capital indebtedness is an allowable cost.

. . . .
"21. Lease payments. Lease payments must be reported in accordance with the financial accounting standards board statement No. 13."

We note at least one federal district court has upheld the Department of HEW's regulations which authorized a limitation to be placed on opportunities for profit. That court held the provision limiting profit on services to medicaid patients receiving long-term nursing care did not conflict with either statutory language or congressional intent. *American Health Care Ass'n, Inc. v. Califano,* 443 F. Supp. 612.

However, a medicaid agency cannot expect these services to be rendered without some profit to the private owner. When half of the patients receiving long-term care are medicaid patients, a nongovernmental facility cannot continue to operate without some return on investment. The use of percentiles arrived at from a schedule or array of posted charges of all nursing homes for similar services furnished private patients would appear to include some amount above the level of bare costs, at least for those nursing homes that are efficiently and economically operated. The 1978 regulations authorized a factor for inflation and for profit. The record before us covering the present period from May 1, 1978, to February 29, 1980, appears to indicate cost-finding methods during such period which included a built-in factor for profit while keeping in mind the federal requirement that the payments be no more than reasonable charges of homes efficiently and economically operated.

Regulations containing provisions almost, if not, identical to those of the 1978 regulations were adopted by the Department of Social and Rehabilitation Services for 1979 and 1980. The state regulations approve the use of percentiles based on posted charges supplied by the providers for the purpose of establishing payment rate structures. Percentiles are arrived at as follows: If there are one hundred nursing homes furnishing a particular service for posted charges to private patients, these charges are arrayed from the highest to the lowest in a list. The charge which is positioned fiftieth from the bottom of the list is at the fiftieth percentile. The posted charge which is positioned seventy-fifth from the bottom of the list or array is referred to as being at the seventy-fifth percentile. The highest charge is at the one-hundredth percentile.

An explanation of the use of percentiles by the State Department of Social and Rehabilitation Services was furnished to the trial court as Plaintiff's Exhibit No. 9. The schedule or array of nursing facility charges is used by the department to determine reasonable cost-related charges for particular services furnished at a level of the mythical nursing facility that is "economically and efficiently operated," as required by 42 C.F.R. § 447.302(b) (1978).

Under the federal regulations heretofore quoted it is appropriate to set a ceiling on reasonable cost-related payment rates. We note in *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d at 394-95, the Fifth Circuit Court of Appeals refused to strike down the use of ceiling rates based on the sixtieth percentile. We cannot say as a matter of law that the use of the seventy-fifth percentile as explained in Plaintiff's Exhibit No. 9 results in unreasonable rates for reimbursement which are not in accordance with the federal law and regulations. We note in the federal regulations adopted February 1, 1978, it is pointed out that states should be allowed greater flexibility to experiment in developing methods of determining reasonable cost-related rates. Surely rates set at the seventy-fifth percentile of costs posted by all nursing facilities furnishing a particular service in Kansas should be presumed to be set on a reasonable cost-related basis for efficiently and economically run nursing homes. Using that percentile at least seventy-five out of every hundred nursing homes in Kansas would be charging no more for similar services furnished their private patients. Twenty-five would have higher posted charges for their private patients. In arriving at reasonable charges the Director of Medical Services Section explained how the reimbursement rates were being set. Factors were being added for increase in the minimum wage, for efficiency and for inflation. Country Club Home, Inc. was being allowed $24,000.00 per year rent expense, plus amortized leasehold expense and depreciation expense. We cannot say a return on investment was denied.

The final grounds found by the trial judge for holding the regulations invalid stemmed from the fact legal fees and costs of *any action against the Secretary were not listed as allowable costs* for the purpose of setting rates. We see nothing in the statutes or regulations authorizing attorney fees, such as those in the present case, to be charged as part of the costs of medicaid patients in

nursing homes. Traditionally the cost of attorney fees is an obligation of the client and cannot be shifted to the other party in a lawsuit unless such is authorized by statute. See *Lines v. City of Topeka,* 223 Kan. 772, 577 P.2d 42 (1978), and cases cited therein at page 782. The attorney fees and costs in the present case, in the absence of statute or regulation, should not be considered an authorized charge for nursing services furnished to medicaid patients. It is not required that such items be built into the reimbursed service costs. However, we do not mean to indicate attorney fees and costs can never be used in the cost structure when incurred for the purpose of assisting the nursing homes to obtain reasonable cost-related payments. We have found no prohibition of such in any of the federal regulations. A provision for such would be possible if authorized by state statute or by state regulation. We note that K.A.R. 30-10-12(b)(4)(A)(ii) as amended May 1, 1980, was not in effect during the period with which we are concerned.

A court may not substitute its judgment for that of the Secretary of Social and Rehabilitation Services in determining which method is preferable to determine a reasonable cost-related basis for reimbursing long-term care facilities; a court should not intrude into areas of administrative discretion, and it must protect the director's right to select among effective options. The statute and regulations for this period are valid.

One final matter should be mentioned. The appellant contends the assigned judge erred in making a class action finding at a variance with the previous rulings of Judge A. B. Fletcher, Jr. on February 25, 1974, and at a variance with a later holding by Judge William D. Clement on October 19, 1976, after the supplement to the amended petition had been filed setting forth the third claim. The pretrial order limited the trial to questions concerning the validity of the regulations adopted by the Department of Social and Rehabilitation Services of Kansas. As we view the recitation of facts concerning the class action features of the action, the assigned judge did not intend to change any of the previous decisions of Judge Fletcher and Judge Clement. Instead of attempting to change any previous orders entered on the class action features of the case, Judge Woleslagel merely recited the class action facts to limit and define the scope of his decision on the declaratory judgment feature of the case.

It becomes apparent from our decision that only the regulations from July 1, 1971, to May 1, 1978, were invalid, not those adopted subsequent thereto. The trial court before proceeding with the action on remand should redetermine whether the action should continue as a class action. K.S.A. 60-223(*c*)(1) relating to determination of whether a class action may be maintained and to actions conducted partially as class actions states:

"An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

The class action order by Judge Woleslagel appears to be conditional. Looking through the record of this case we find that a substantial number of nursing facilities have exercised the right to opt out of the class as authorized by K.S.A. 60-223(*c*)(2); others have notified the court that they are no longer engaged in furnishing these services. Because of this and the lapse of time since the action was first filed, it would appear imperative that on remand the trial court should reexamine the prerequisites to a class action and, if the action is to continue as a class action, should specifically define the class in order to determine the names and the number of nursing homes that would be affected during the key period from July 1, 1971, to May 1, 1978.

We hold the statute, K.S.A. 39-708c(*x*) and amendments, together with K.A.R. 30-10-12 and K.A.R. 30-10-13 (1978), are not in conflict with either the federal Social Security Act or the federal regulations for the period from May 1, 1978, to February 29, 1980.

In accordance with the foregoing we hold the regulations of the Department of Social and Rehabilitation Services, K.A.R. 30-5-27, 30-9-12 and 30-10-12, for the period from July 1, 1971, to May 1, 1978, adopted to implement and take advantage of the Social Security Act Title XIX plan were invalid or were administered in such a way as to be invalid in their application as set forth in the foregoing opinion. The judgment is affirmed in part, reversed in part, and remanded for further proceedings in accordance with the foregoing opinion.