661 F.2d 282
 FORBES HEALTH SYSTEMS, a Corp.
v.
Patricia HARRIS, Indiv. and as Secretary of the U. S. Dept.
of Health, Education & Welfare, Helen O'Bannon, Indiv. and
as Secretary of Penna. Dept. of Public Welfare, Glenn
Johnson, Indiv. and as Director of the Bureau of Medical
Assistance of the Penna. Dept. of Public Welfare, and Penna.
Dept. of Public Welfare.
WASHINGTON HOSPITAL and South Hills Health System and All
Saints Hospital and Lock Haven Hospital and Andrew
Kaul Memorial Hospital (Intervenor)
v.
Helen B. O'BANNON, Ind. and as Secretary of the Department
of Public Welfare of the Commonwealth of Pennsylvania, and
Gerald F. Radke, Ind. and as Deputy Secretary for Medical
Assistance of the Department of Public Welfare of the
Commonwealth of Pennsylvania, and Commonwealth of
Pennsylvania, Department of Public Welfare.
Appeal of Helen B. O'BANNON, Glenn Johnson and Gerald F. Radke.
 No. 81-1239.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1981.
Decided Oct. 14, 1981.
 
 C. Richter Taylor, Jr. (argued), Thomas E. Boyle, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for Forbes Health System.
 Roland Morris, Jane D. Elliott (argued), Kay E. Tucker, Duane, Morris & Heckscher, Philadelphia, Pa., for Washington Hospital and South Hill Health System.
 John G. Knorr, III (argued), Deputy Atty. Gen., Allen C. Warshaw, Deputy Atty. Gen., Chief, Civil Litigation, Leroy S. Zimmerman, Atty. Gen., Harrisburg, Pa., for Helen B. O'Bannon, Gerald F. Radke and Glenn Johnson.
 Before GIBBONS and HUNTER, Circuit Judges, and GERRY,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Secretary of the United States Department of Health, Education and Welfare Patricia Harris, Pennsylvania Secretary of Public Welfare Helen B. O'Bannon, Deputy Secretary for Medical Assistance of the Pennsylvania Department of Public Welfare Gerald F. Radke, and Director of the Bureau of Medical Assistance of the Pennsylvania Department of Public Welfare Glenn Johnson (collectively referred to as "DPW"), defendants below, appeal from the grant of an injunction forbidding them from implementing a regulatory requirement that nursing homes be on the site of an acute care facility in order to be reimbursed as "hospital-based" nursing homes. The district court found that the regulation had, prior to 1980, contained no on-site ("co-location") requirement, and that the 1980 amendment to the regulation was invalid because it had not been submitted to the Secretary of the Department of Health, Education and Welfare ("HEW" or "HHS") for approval.[1] We affirm.
 
 
 2
 The facts are fully and ably set forth in the district court's opinion, 504 F.Supp. 974, 975-78 (W.D.Pa.1980). The following outline of the facts is drawn from that opinion.
 
 
 3
 In 1973, the Pennsylvania Department of Public Welfare issued a regulation defining two categories of skilled nursing facilities ("nursing homes"): hospital-based and non-hospital based. The regulation provided, in relevant part:
 
 
 4
 Nursing facilities desiring to participate ... under Medical Assistance (Medicaid) must meet the following requirements:
 
 
 5
 (1) ....
 
 
 6
 (c) A hospital-based skilled nursing home unit must be licensed or approved by the Office of Medical Programs and/or certified for Title XVIII (Medicare) participation.
 
 
 7
 Medical Assistance Manual § 9424.6 (55 Pa.Code § 9424.6) ("the 1973 regulation"). Hospital-based nursing homes received reimbursement at a higher rate than those falling into the non-hospital-based category.[2]
 
 
 8
 The following regulation amending the 1973 regulation allegedly became effective on July 1, 1980:[3]
 
 
 9
 9424.6 Skilled Nursing Facility Participation Requirements
 
 
 10
 Nursing facilities desiring to participate in the Skilled Nursing Facility Care and Services Program under Title XIX, Medical Assistance (Medicaid), must meet the following requirements:
 
 
 11
 (1) State licensure or approval.
 
 
 12
 (a) A proprietary, non-proprietary, or hospital-based skilled nursing facility must be licensed or approved by the Department of Health. A skilled nursing facility certified for Title XVIII (Medicare) is automatically eligible to participate in the Medical Assistance Program.
 
 
 13
 (b) A hospital-based skilled nursing facility is a distinct part unit that is located physically within or on the immediate grounds of a general hospital .... Also, the distinct part facility shares support services and administrative costs of the hospital. The hospital services shall be available to the general public.
 
 
 14
 Medical Assistance Manual § 9424.6 (55 Pa.Code § 9424.6) ("the 1980 regulation"). This regulation for the first time explicitly defined a hospital-based facility as one located on the site of an acute care facility ("the co-location requirement").
 
 
 15
 Plaintiffs Washington Hospital ("Washington") and South Hills Health System ("South Hills") each operate a skilled nursing facility which is located some distance away from their acute care facilities. Those nursing homes have been in operation since 1970 and 1977, respectively, and have always been reimbursed as hospital-based nursing facilities. In 1978, Forbes Health System applied for reimbursement at the hospital-based rate for its newly-converted skilled nursing facility, which, like the nursing facilities operated by Washington and South Hills, is located some distance away from its acute care facility. DPW denied compensation at the hospital-based rate to the Forbes facility, and classified it as a free-standing (non-hospital-based) nursing home because it was not located on the grounds of a hospital.
 
 
 16
 Forbes brought suit challenging the DPW decision not to reimburse it at the hospital-based rate. On May 21, 1980, the district court issued an injunction pendente lite requiring DPW to treat the Forbes facility in the same way as other off-site nursing homes (including the nursing homes run by Washington and South Hills). DPW technically obeyed the injunction by reclassifying the Washington and South Hills facilities as non-hospital based for the years 1979-80 and 1980-81.
 
 
 17
 Washington and South Hills promptly filed suit challenging the reclassification. That suit was consolidated by the district court with the action brought by Forbes insofar as both suits involved challenges to the co-location requirement.[4] After holding a hearing, the district court ruled that the co-location requirement had not been part of the regulation promulgated in 1973, and enjoined implementation of the 1980 regulation on the ground that the regulation had not been submitted to and approved by HEW.
 
 
 18
 DPW contends here, as it did below, that the 1973 regulation from the outset contained an implicit co-location requirement, that the 1978 regulation, quoted in footnote 1 supra, implicitly reaffirmed that requirement, that DPW's interpretation of its 1973 and 1978 regulations should be binding on this court, and that the 1980 regulation, which explicitly included a co-location requirement, is valid because (a) it changes nothing in or has a minimal impact upon the 1973 regulation and hence need not be submitted to HHS for approval, or, in the alternative, (b) it was approved by HEW when Forbes wrote to the regional HEW official and that regional official wrote back that the definition appeared permissible.[5]
 
 
 19
 The district court rejected all of the DPW contentions, ruling that there was no implicit co-location requirement in either the 1973 or 1978 regulations, that the 1980 amendment required submission to the Secretary for review, that it had not been so submitted, and that it had never become effective for that reason. We agree with all of the district court's conclusions. The district court did not reach the question of whether the co-location requirement, if appropriately approved, would be valid, and neither do we.
 
 
 20
 It is beyond cavil that a court normally defers to an agency's interpretation of its own regulation. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 418, 65 S.Ct. 1215, 1217-1219, 89 L.Ed. 1700 (1945). However, "the weight of an administrative interpretation will depend, among other things, upon 'its consistency with earlier and later pronouncements' of an agency." Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (citation omitted). In General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1977), the Supreme Court rejected a 1972 EEOC guideline which "flatly contradict(ed) the position which the agency had enunciated at an earlier date, closer to the enactment of the governing statute.... We have declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency." Id. at 142, 143, 97 S.Ct. at 411.
 
 
 21
 DPW's contention that we should defer to its interpretation of the 1973 regulation as including an implicit co-location requirement is disingenuous. From 1973, when the hospital-based category was established, until 1978, when Forbes applied for reimbursement as a hospital-based facility, DPW made no contention that the 1973 regulation included a co-location requirement. Until 1980 DPW treated the Washington and South Hills nursing homes as hospital-based, even though neither of those facilities was located on the site of its related acute care facility.[6] It was not until the court ordered DPW to treat Forbes in the same manner as other off-site hospital-based nursing homes that DPW sought to incorporate into the 1973 regulation a requirement that all nursing homes seeking reimbursement at the hospital-based rate be on-site in order to receive that rate. Where an agency's 1978/80 interpretation of a 1973 regulation flatly contradicts that agency's consistent practice from 1973 to 1978/80, the 1978/80 interpretation should not prevail. Here, the 1978/80 interpretation appears to involve an after-the-fact attempt by the agency to alter the meaning of its own regulation, and we will therefore rely not on the 1978/80 interpretation, but rather on the agency's own practices between 1973 and 1978/80.
 
 
 22
 We conclude, as did the court below, that there was not, never has been, and is not now any implicit co-location requirement in the regulations governing the reimbursement of nursing homes.
 
 
 23
 In 1980, DPW promulgated the regulation quoted above, which explicitly included the co-location requirement. The district court found that the regulation had never been presented to the Secretary of HEW for review and was therefore invalid. 504 F.Supp. at 980, citing the testimony of Milton Dezube. The finding that the 1980 regulation was never submitted to HEW for review is not clearly erroneous, and the conclusion that the regulation is invalid is therefore warranted.
 
 
 24
 The reimbursement methods used by a state must be approved and verified by the Secretary of HEW. 42 U.S.C. § 1396a(a)(13)(E). The Secretary " 'has the responsibility to seek to assure that the methodologies will in fact result in reasonable cost related reimbursement....' " Alabama Nursing Home Ass'n v. Harris, 617 F.2d 388, 393 (5th Cir. 1980) (quoting 41 Fed.Reg. at 27,300). Given the conclusion of this court that the 1973 and 1978 regulations did not include or support an implicit co-location requirement, it is clear that the 1980 regulation makes a change in the state reimbursement scheme which is of "sufficient substance" to warrant HHS review prior to becoming effective. See California Hospital Ass'n v. Obledo, 602 F.2d 1357, 1363 (9th Cir. 1979).[7]
 
 
 25
 For the foregoing reasons, we affirm the district court's decision in all respects. Our affirmance is, of course, without prejudice to any further action before the trial court involving the issues which were the subject of the motions to remand filed immediately prior to the oral argument of this case.
 
 
 
 *
 Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The Department of Public Welfare was dismissed from these actions. 504 F.Supp. at 975 n.3. HHS did not appeal from the granting of the injunction
 
 
 [2]
 In October 1978, a new section was added to the state regulations governing medicaid reimbursements. That section provides, in part, as follows:
 Reimbursement under a separate statewide ceiling is available only to those hospital-based facilities meeting the participation requirements under § 9424.6 and the following additional requirements and conditions:
 
 
 [1]
 The hospital is utilizing former acute care hospital beds that have been converted to and certified for skilled nursing care.... (S)eparate reimbursement may be available to a hospital that constructs new skilled nursing beds if the need for the beds is determined by the agency
 
 
 [2]
 The hospital must substantiate to the Department that it is economically feasible to operate a distinct part SNF (Skilled Nursing Facility) Unit
 Medical Assistance Manual § 9424.7121 (55 Pa.Code § 9424.7121) ("the 1978 regulation"). The 1978 regulation deals with the so-called conversion requirement. It is quoted and discussed herein only insofar as DPW contends that it supports DPW's interpretation of the 1973 regulation. It is otherwise not at issue in this case. See 504 F.Supp. at 979 n.8.
 
 
 [3]
 The amendments were originally proposed on April 15, 1978 and scheduled to take effect on February 3, 1979. An administrative error not relevant here led to resubmission and republication of the amendments, which allegedly became effective on July 1, 1980. 10 Pa. Bulletin 986-87 (1980)
 
 
 [4]
 Washington and South Hills were the only two plaintiffs in Civil No. 80-1106 affected by the co-location requirement
 
 
 [5]
 The set of DPW regulations approved by the Secretary of HEW on August 11, 1978, did not include an explicit co-location requirement
 
 
 [6]
 This court does not reach the question of whether it was important for DPW to have known that neither nursing home was on the site of its related acute care facility. However, the record here reveals that DPW knew that the Washington nursing home was not on the same site as its related acute care facility. See appendix at 411a, 413a
 
 
 [7]
 In California Hospital, the court stressed the need for reimbursement to cover the "reasonable cost" of inpatient hospital services, and noted "the importance of HEW evaluation of all factors having a substantial bearing upon the determination of the reasonable cost of inpatient hospital services." Id. at 1362. The Secretary's review of a state plan must be "sufficient in scope to afford reasonable assurance that adherence to the methods and standards proposed by the state would result in a fair determination of reasonable cost." Id. Here, DPW seeks by the 1980 amendment to alter completely the reimbursement scheme applicable to certain nursing homes. Such an alteration requires HEW scrutiny before it can go into effect
 The record contains a letter from the Philadelphia HEW office to Representative Moorhead apparently in reply to a question about the explicit co-location requirement raised by Forbes. Appendix at 378a-79a. DPW argues that this letter satisfies the review requirement. However, that letter does not discuss the explicit co-location requirement as an amendment, but rather seems to assume that the requirement was already "part of a reimbursement scheme." This court does not, however, reach the meaning or effect of the letter to Rep. Moorhead: the trial court found that the 1980 regulation had never been reviewed by HEW, and Milton Dezube, an HEW official involved in reviewing Pennsylvania's plan, testified that HHS had never reviewed the 1980 regulation. Appendix at 211a-212a. In addition, HEW stated in an April 1980 answer to an interrogatory that "HEW did not review DPW's amendments to its regulations ... which defines hospital-based skilled nursing facilities." Appendix at 102a.