**GERIATRICS, INC., a Nevada corporation, authorized to do business in Colorado, Plaintiff-Appellee,**

v.

**COLORADO DEPARTMENT OF SOCIAL SERVICES; Colorado Board of Social Services; George S. Goldstein, in his official capacity as Director of the Department of Social Services; Don R. Stimmel, Hearing Officer; Colorado Department of Administration; and the State of Colorado, Defendants-Appellants.**

No. 83CA1127.

Colorado Court of Appeals, Div. III.

May 30, 1985.

Rehearing Denied July 11, 1985.

Certiorari Denied Jan. 27, 1986.

Miles & McManus, Frederick Miles, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wade Livingston, Asst. Atty. Gen., Denver, for defendants-appellants.

METZGER, Judge.

The Colorado Department of Social Services (Department), the Colorado Board of Social Services (Board), George S. Goldstein, Director of the Department of Social Services, Don P. Stimmel, Hearing Officer, the Colorado Department of Administration, and the State of Colorado (defendants), appeal a declaratory judgment which required the Department to recalculate Medicaid rates for the facilities of plaintiff,

Geriatrics, Inc., based on oxygen expenses and roomhold revenues. We affirm in part and reverse in part.

Geriatrics owns, operates, and manages 27 nursing homes in Colorado, each of which participates in the Colorado Medical Assistance Program (Medicaid). As a requirement for reimbursement through Medicaid, Geriatrics must file semi-annual cost reports (Med-13's) for each of its participating facilities.

This dispute centered around adjustments made by the Department to the Med-13's filed by Geriatrics for the reporting periods ending March 31, 1979, and September 30, 1979. The issues concern (1) the Department's disallowance of a portion of the oxygen cost for Geriatrics' patients and (2) the Department's requirement that revenue from sources other than Medicaid, derived from charges for holding a room during a patient's temporary absence from the nursing home (roomhold), be subtracted from the total costs for all patient services.

Each of Geriatrics' nursing homes must submit a Med-13 every six months which the Department uses to set prospective payment rates pursuant to § 26–4–110(6), C.R.S. (1982 Repl.Vol. 11). The Med-13 contains all costs, revenues, and the number of patient days from the preceding six-month reporting period. The Department establishes prospective payment rates based upon the average cost of providing medical services per patient per day. The Department does not reimburse dollar for dollar but uses this cost data to set the rate it will pay for services performed in the future.

The Med-13's are divided into different schedules. Schedule A separately reports all revenue from routine services including room, board, nursing care, laundry, and housekeeping. This routine service revenue is derived from the daily room charge but is not used to calculate the per diem rate nor the allowable audited costs of the facility.

After reporting costs on Schedule A and eliminating certain program expenditures on Schedule B, costs are compiled on

Schedule C to determine the "cost base" for computation of the Medicaid per diem rate for the next six-month period.

The total reported cost of each nursing home is divided by the number of patient days to determine the average cost-per-patient per day (per diem rate). This cost includes all patient days, although not all nursing home residents are eligible for Medicaid. This average cost is then increased by a certain amount for inflation, and may also be increased to provide an incentive allowance if the nursing home's reported costs are below the maximum amount allowable. See § 26–4–110(5)(b) and (c), C.R.S. (1982 Repl.Vol. 11). This established payment rate remains in effect until new Med-13's are submitted and a new rate is determined.

The Med-13 is audited by the Department; all expenditures are examined in detail to determine if they are patient-related, reasonable in amount, and necessarily incurred. See 42 C.F.R. § 447.302(b) and § 447.253(e) (1980). The per diem rate is compared to, and may not exceed, a predetermined maximum rate. The state then reimburses the nursing home "for its actual or reasonable costs of services rendered, whichever is less." Section 26–4–110(5)(a), C.R.S. (1982 Repl.Vol. 11).

An administrative hearing held at Geriatrics' request, in accordance with § 24–4–105, C.R.S., upheld the Department's actions with respect to the Medicaid reimbursement rate requirements for oxygen and roomhold. Geriatrics then sought judicial review, claiming that the Department's regulations concerning oxygen and roomhold were contrary to law and violated Geriatrics' statutory rights as a participating Medicaid provider under Title XIX of the Social Security Act (42 U.S.C. § 1396, et seq.) (1976) and the Colorado Medical Assistance Act (§ 26–4–101,. et seq., C.R. S.).

The trial court found that the Department's refusal to allow Geriatrics' facilities to include excess oxygen expenses as part of their total reimbursable costs for the purposes of computing per diem rates violated federal and state statutes and regulations requiring actual or reasonable cost-reimbursement for services provided. It directed the Department to recalculate and adjust Medicaid reimbursement rates for Geriatrics' facilities which had oxygen costs disallowed for the same cost-reporting period in question and for all subsequent periods, and it enjoined the Department from disallowing such costs in the future if the costs were reasonable, necessary, and patient related.

With respect to roomhold revenue, the trial court found that the Department's new regulation failed to comply with generally accepted accounting principles and that it, in effect, shifted the costs for Medicaid patients to private sources. Concluding that this practice was violative of the statutes creating the Medicaid program, the trial court held that the regulation was null, void, and of no effect and ordered the Department to recalculate roomhold rates accordingly.

## I.

The defendants first contend that the regulations requiring nursing homes to bill and be paid separately for oxygen costs are reasonable and lawful. We disagree.

Prior to 1969 oxygen costs were included on Schedule C, which is used to determine the "cost base" for computation of the Medicaid per diem rate. However, in response to the refusal of some nursing homes to admit residents with emphysema or other respiratory difficulties, the Department enacted regulations which required separate billing procedures for oxygen costs. The new billing procedure allowed nursing homes to report their full oxygen costs as they arose. These oxygen regulations were and still are appropriate in order to encourage nursing homes to accept patients with respiratory ailments.

However, when the oxygen regulations were adopted, the Department failed to realize the difficulties a nursing home would have measuring the exact amount of oxygen used by each patient. The nursing homes found that their total actual oxygen

costs exceeded the total of separately reported oxygen costs, and thus, they reported the difference as reimbursable costs on their Med-13's. Defendants contend that the Department may disallow these excess oxygen costs pursuant to Department of Social Services Regulation § 8.465, 10 Code Colo.Reg. 22.12.59. We disagree.

While a state is not obligated to participate in the Medicaid program, if it does participate it must comply with all governing statutes and regulations, including those regulating reimbursement. *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The state's participation is set forth in a regulatory framework called a "state plan." This state plan must conform to the requirements of federal laws and regulations, specifically 42 U.S.C. § 1396a (1976), and its implementing regulations. The statute provided, until October 1, 1980, that the state plan must pay providers on a "reasonable cost related basis":

"A state plan for medical assistance must ... provide ... for payment of the skilled nursing facility and intermediate care facility services provided under the plan on a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the secretary." 42 U.S.C. § 1396a(a)(13)(E) (1976).

This provision, commonly referred to as "Section 249," provided for implementation of state methods and procedures for payment of services for program beneficiaries by nursing homes. 42 U.S.C. § 1396a(a)(30) (1976).

The federal regulations which implemented Section 249, 42 C.F.R. part 447, subparts A, B, and C, are incorporated by reference into the state plan. 42 C.F.R. §§ 447.251 and 447.273 (1980). These regulations provided for the establishment of a system that contemplates reimbursement of a provider's actual cost in full:

"Payment rates must not be set lower than rates that the agency reasonably finds to be adequate to reimburse in full the actual allowable costs of a facility that is economically and efficiently operated." 42 C.F.R. § 447.302(b) (1980).

Therefore, determination that a facility's expenditure was patient related, reasonable in amount, and necessary, required reimbursement in full for services and supplies if the facility was operated economically and efficiently.

Although 42 U.S.C. § 1396a(a)(13) was amended October 1, 1980, the change, known as the Boren Amendment, expressly reflects an emphasis in reimbursement to that which is reasonable and adequate to meet a cost incurred by a facility in order to conform to applicable state and federal laws and regulations. Therefore, § 249, as well as the new Boren Amendment, requires full and current reimbursement of actual expenditures incurred by facilities. As well, it prohibits any device utilized by a state to lower reimbursement, other than that authorized by statute.

The Department's authority is further limited by Department of Social Services Regulation § 8.440, 10 Code Colo.Reg. 22.-12.20, which provides that nursing homes participating in the program "shall receive reasonable reimbursement in accordance with these rules as promulgated by the Colorado State Board of Social Services and based upon the nursing home's allowable auditable costs."

Where an agency's interpretation of a Medicaid-related regulation clearly contradicts that agency's consistent practice, the agency's practices and not its interpretation should prevail. *Forbes Health Systems v. Harris*, 661 F.2d 282 (3rd Cir.1981). Contrary to the Department's assertion, the record indicates that its past practice was to allow carryover of oxygen expenses to Schedule C. These expenses then became part of the cost base for computation of the facility's per diem rate.

Cost reports and oxygen expense statements for two Geriatrics facilities indicate that Schedule C oxygen expenses had been allowed during the period in question. Testimony was also given by a former senior auditor that it was the unequivocal practice of the auditors to allow any oxygen ex-

pense to be carried over to Schedule C to the extent that such expense exceeded the revenue, in spite of separate billing for the cost by the facility. This policy was contained in the policy manual of defendants' former contract cost auditor, and was used to compute the per diem rates of many of plaintiff's facilities. Additionally, the Department's own expert witnesses testified that § 8.465 did not contain any language directing that excess oxygen expenses be disallowed on Schedule B, and further admitted that such a disallowance would result in a failure to reimburse fully for the expense.

■■■ The rationale requiring that reimbursement reflect the actual costs of services is premised on the belief that reimbursement at less than a full rate would discourage private health care providers from participating in the Medicaid program. The program goal is to provide services to program recipients to the same extent, or as nearly as possible, as those services are available to the general public. 42 C.F.R. § 447.204 (1980). The final effect of the Department's policies relative to oxygen expenses would be a reduction of services to needy recipients. Since defendants stipulated that oxygen costs were patient related, reasonable in amount, and necessary, we find no regulation, rule, accepted policy, or interpretation that would permit the Department to disallow portions of a facility's oxygen expenses because they are not separately billed. Accordingly, the trial court's determination as to this issue is affirmed.

## II. Roomhold Revenue

Defendants next contend that the Department of Social Services Regulation § 8.448.32C, 10 Code Colo.Reg. 22.12.48, which requires nursing homes to offset all revenue received for roomhold, is reasonable and lawful. We agree in part and disagree in part.

The roomhold regulation allows participating facilities to charge residents who are temporarily absent for reserving a room. Department of Social Services Regulation § 8.482.43, 10 Code Colo.Reg. 22.-12.8. There is a distinction between non-medical and medical leave of a Medicaid patient. Medical leave usually results from the Medicaid program patient's admission to a hospital for treatment, and the daily charge for his or her reserved room cannot exceed the per diem rate less two dollars, if the facility's occupancy exceeds 90 percent. All medical leave is paid from the patient's private funds even though the patient is a Medicaid program recipient. Department of Social Services Regulation § 8.482.43C, 10 Code Colo.Reg. 22.12.8.

The non-medical leave regulation allows Medicaid payment for a patient's roomhold for a maximum of 18 days per year. Department of Social Services Regulation § 8.482.44, 10 Code Colo.Reg. 22.12.86. The patient must pay for roomhold from private funds for all non-medical leave days in excess of this number.

Private patients are not covered by Department regulations, and may be charged unrestricted amounts for roomhold. This procedure obtains whether the reason for the patient's leave is medical or non-medical.

Department of Social Services Regulation § 8.448.32C, 10 Code Colo.Reg. 22.12.-48, states:

"Revenue from patients, or others, resultant from charges made for room reservations, must be classified sufficiently in the accounting records, and such amount shall be entered on Schedule A,.... This revenue then also shall be shown in Column 9, Schedule C, Line 33."

Department of Social Services Regulation § 8.482.43 C–4, 10 Code Colo.Reg. 22.12.85, requires that "[r]evenues to the nursing home from room reservations must be used in reduction of related expenses, on the Med-13 form."

■■■ Geriatrics argues that the Department's regulation § 8.448.32C, and the Department's interpretation of that regulation, which requires roomhold revenues to be offset against the *total* reimbursable cost expenses of the facility, is inconsistent and invalid because it causes revenue derived from private sources to be deducted from the total allowable audited cost of the facility. This in turn reduces the facility's

per diem rate. Therefore, Geriatrics contends, an offset of any kind is improper since there are no costs related to roomhold. We disagree.

Generally accepted accounting principles require revenue to be offset against related costs. *Hospital San Jorge v. Secretary of HEW*, 616 F.2d 580 (1st Cir.1980). While the costs associated with billing procedures for roomhold may be insignificant, the costs associated with the service of reserving a room are not. Although the nursing home patients are temporarily away from their rooms, the facility must still provide routine services such as heat and maintenance. A facility cannot reasonably alter expenditures for these items because of the small ratio of roomhold days compared to total days.

In *Country Club Home, Inc. v. Harder*, 228 Kan. 756, 620 P.2d 1140 (1980), the court authorized depreciation allowance, interest expenses, and lease payments as set-offs. It held that these costs, as well as costs associated with utilities and personnel, are necessary to operate the physical plant and are, therefore, costs associated with roomhold services which cannot be terminated during the patient's absence and should be offset against roomhold revenue as related costs. We agree with that analysis.

Alternatively, Geriatrics contends that regulation § 8.448.32C causes revenue derived from private sources to be deducted from the total allowable audited costs of the facility. It maintains that revenues collected from private patients above the per diem rate or cost basis represent profit, and should not be off-set. We agree. While opportunities for profit may be limited, a Medicaid agency cannot expect private facilities to continue to operate without some return on investment. *Country Club Home, Inc. v. Harder, supra.* We agree that offsetting *all* roomhold revenues, including the amounts collected from private pay patients, improperly transfers private funds to subsidize Medicaid patients. As well, it eliminates any profits a facility might enjoy as a result of roomhold revenue. Consequently, private roomhold revenue should be off-set only to the extent of a facility's per diem rate, thereby eliminating private funding of Medicaid while also allowing the facility to keep the excess.

The judgment is affirmed as to the calculation of oxygen costs. The judgment concerning the offset of revenue from roomhold for the periods in question is reversed, and the cause is remanded for entry of judgment permitting such offset only to the extent of a facility's per diem rate.

BERMAN and BABCOCK, JJ., concur.