**FLORIDA NURSING HOME ASSOCIATION, INC., a non-profit corporation, University Park Convalescent Center, Inc., Ambrosia Home, Inc., Louise Russ, Theresa Hicks, Juliie Mae van Blount, Edward Anderson, Jimmy Lee Watson and Marilyn Morton as representatives of a class, Julia Mansell, in her own right and as representative of a class, Plaintiffs,**

v.

**William J. PAIGE, Jr., Secretary of the Department of Health and Rehabilitative Services of the State of Florida, Frank Groschelle, Regional Director of the Department of Health, Education and Welfare and Joseph A. Califano, Secretary of the Department of Health, Education and Welfare, Defendants.**

**No. 77–559–CIV–WMH.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 1, 1984.

Bernard H. Dempsey, Jr., Karen L. Goldsmith, Dempsey & Goldsmith, P.A., Orlando, Fla., for plaintiffs.

Alicia S. Jacobs, State of Fla., Dept. of Health and Rehabilitative Services, M. Stephen Turner, Culpepper, Turner & Mannheimer, Tallahasse, Fla., for state defendants.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Stanley Marcus, U.S. Atty., Marc Fagelson, Asst. U.S. Atty., Miami, Fla., Lewis K. Wise, Elisa B. Vela, Loretta R. Pitt, Dept. of Justice, Civ. Div., Washington, D.C., for federal defendants; Jeffrey Golland, Dept. of Health and Human Services, Washington, D.C., of counsel.

## ORDER

HOEVELER, District Judge.

THIS CAUSE came before the Court on Defendants' motions to dismiss for lack of jurisdiction. Defendants contend that the relief sought by plaintiffs is barred by the Eleventh Amendment.

## HISTORY

Plaintiffs are nursing homes and a nursing home association. They brought suit against the State of Florida and the United States alleging that the plan under which Florida reimbursed them for services to Medicaid patients did not meet the standards set by the federal Medicaid law, and that as a result they were underpaid. At the time this action was brought, the Social Security Act, at 42 U.S.C. § 1396a(a)(13)(E), required that nursing homes be reimbursed "on a reasonable cost related basis" effective July 1, 1976. Florida was reimbursing the plaintiffs under a plan employing fixed maximum reimbursement rates. The State was relying on a regulation of the U.S. Department of Health, Education and Welfare which did not require states to begin reimbursing on a cost-related basis until January 1, 1978.

On October 18, 1977, this Court issued an order in the related case of *Golden Isles Convalescent Center, Inc. v. Califano* holding that the plaintiff nursing homes in that case were entitled to Medicaid reimbursements on a "reasonable cost related basis," effective July 1, 1976, as required by statute, and that HEW regulations were invalid insofar as they set any other effective date. *Golden Isles Convalescent Center, Inc. v. Califano*, 442 F.Supp. 201 (S.D. Fla.1977). By that Order (hereinafter the "October 18th Order"), the Court also directed HEW to determine whether Florida's reimbursement plan (hereinafter the "original plan") complied with that federal standard, and ordered that, if HEW found that the plan did not comply, the state must submit a new plan to HEW for approval. It was further held that any plan submitted must "make provision for the reimbursement to plaintiffs on a reasonable cost related basis for services rendered from the date of this Order prospectively." On January 5, 1978, the October 18th Order order was adopted in the case at bar.

On July 7, 1978, the Court held that plaintiffs were barred by the Eleventh Amendment from recovering retroactive damages for reimbursement deficiencies occurring prior to the October 18, 1977, Order. That ruling was affirmed by the United States Supreme Court. *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981).

Pursuant to the October 18th Order, the State submitted for HEW approval a new reimbursement plan, called "Plan 77–13". That Plan was approved by HEW, and, on September 16, 1978, the Court ordered the State to reimburse plaintiffs according to Plan 77–13 retroactively from October 18, 1977, the date the original plan was ruled inadequate. The Court reserved for trial the review of HEW's finding that Plan 77–13 complied with the federal statutory standard.

On May 7, 1980, the Fifth Circuit held in *Alabama Nursing Home Ass'n. v. Harris,* 617 F.2d 388 (5th Cir.1980), that HEW procedures for reviewing and approving state Medicaid reimbursement plans were inadequate. The Fifth Circuit directed HEW, which by then had been renamed the Department of Health and Human Services, to devise new review procedures. On July 28, 1980, this Court ordered HHS to review Plan 77–13 under the new procedures created pursuant to the Fifth Circuit's decision in *Harris,* and to issue monthly status reports on its progress. The parties dispute whether Plan 77–13 was ever approved by HHS under the new procedures. This issue need not be addressed in order to decide the motion now before the Court. The parties do agree that the Court never passed on the adequacy of Plan 77–13 or reviewed any approval by HHS under the new procedures, if there was such an approval.

Effective October 1980, the federal Medicaid statute was changed. Under the Boren Amendment, the federal standard for state Medicaid reimbursement plans was revised to provide that reimbursement rates must be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities ... ." The parties disagree as to whether this new language changed the substance of the standard and whether, assuming Plan 77–13 violated the old standard, Plaintiffs could recover damages for any deficiency that occurred after new standard took effect and before the Plan was found by the Court to violate the new standard. Even if the Court were to hold that Plaintiffs could not obtain damages for deficiencies occurring after the Amendment took effect, the issue presented in the present motion would remain alive, because plaintiffs might still be entitled to damages for the period prior to the statutory change.

In April, 1983, a third plan, called the Gainesville Plan took effect pursuant to the agreement of the parties. Thereafter, the *Golden Isles* plaintiffs settled all claims against the defendants. The *Florida Nursing Home* plaintiffs did not settle completely. They reserved the right to litigate their claim that the state did not adequately reimburse them under Plan 77–13 from October 18, 1977, to April, 1983, because Plan 77–13 did not meet the federal statutory standard. They do not claim that Plan 77–13 was not related to costs. Rather, they complain of certain technical defects in the plan which rendered payments thereunder not "reasonably" cost related and thus not in compliance with the federal standard and the Court's October 18th Order. They seek damages in an amount equal to the difference between what they would have received during that period under a fully complying plan, and what they actually received under Plan 77–13.

## DEFENDANTS' MOTIONS

Defendants moved to dismiss, contending that, even if Plan 77–13 did not fully comply with the federal statute, plaintiffs may not recover for alleged inadequacies in Plan 77–13 because that plan has never been found by the Court to be invalid, and

the Eleventh Amendment bars an award of damages for injuries incurred prior to such a finding. Put another way, plaintiffs may recover only for reimbursement deficiencies occurring after Plan 77–13 is ruled illegal by the Court. Since Plan 77–13 is no longer in use, there will be no such deficiencies.

Plaintiffs respond that the Eleventh Amendment does not bar the Court from awarding damages here because such damages are merely the costs of complying with the prospective injunctive Order of October 18th. Their argument runs as follows: On October 18, 1977, the court ordered the state to institute a plan that would reimburse plaintiffs on a "reasonably cost related basis," as provided by federal statute, and that plaintiffs were entitled to be reimbursed under such a plan from the date of the October 18th Order forward. Defendants submitted Plan 77–13, which was the first attempt to comply with the Court's Order. The Plan was implemented on an interim basis from October 18, 1977 forward, but, plaintiffs assert, it did not comply with the October 18th Order because, although it was cost related, it had certain technical defects and was therefore not "reasonably" cost related.

The Eleventh Amendment, plaintiffs argue, does not prevent the Court from enforcing its original prospective order by requiring the state to pay according to a fully complying plan from the date of the original order. Such damages are merely the cost of compliance with the original prospective order. The funds spent would be the same funds that the state would have to spend to comply with the original order. If the Court could not award such damages, the defendants could disregard the Court's orders at will. They could implement one non-complying plan after another and never be held liable for the deficiencies of those plans. Plaintiffs rely heavily on *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), discussed below.

Defendants argue that Plan 77–13 was the product of a good faith effort to comply with an order which did not direct a specific solution. Under those circumstances, they contend, the Court may not award damages which accrued before the plan is found to be non-complying by the Court. It may be true that the Court can order a state to pay damages which represent the cost of complying with a previously issued prospective injunction, but only when the injunction directs the state to take a reasonably specific action. Here the injunction was unspecific and indefinite about the amounts to be paid. In such a case, damages may be assessed only upon a showing that the State failed to act with reasonable diligence in attempting to comply. If this were not so, then at any time in the future plaintiffs could return to Court and complain about a new defect and receive damages retroactive to the date of the October 18, 1977 order. Here, for example, plaintiffs now seek damages for alleged defects in technical aspects of the Plan 77–13 that did not even exist in the original plan.

### ANALYSIS

The Eleventh Amendment reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the Amendment does not explicitly bar suits against a state by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state.

In the landmark case of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, the Supreme Court held that the Eleventh Amendment did not bar an action in federal court to enjoin the Minnesota Attorney General from enforcing a statute claimed to violate the 14th Amendment. Thus, the Court established that a state may be sued in federal court for prospective injunctive relief. In later

cases the Court made clear that suits for injunctive relief were not barred even when compliance with the injunction would cost the state a great deal of money. In *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), for example, suit was brought in federal court to enjoin two states from denying welfare benefits to otherwise qualifying aliens. In such cases, the fiscal consequences to the state are the necessary result of compliance with decrees which by their terms are prospective in nature. Such "ancillary effects" are permissible under the doctrine of *Ex Parte Young*.

■ Nevertheless, as the Court has recently reaffirmed in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and on the interlocutory appeal in the case at bar, *Fla. Dept. of Health and Rehab. Services, supra,* the Eleventh Amendment prohibits a federal court from awarding damages against a non-consenting state to compensate for past wrongs. Yet, as the Court recognized in *Edelman,* the difference between retroactive and prospective relief "will not in many instances be that between day and night." 415 U.S. at 667, 94 S.Ct. at 1357. The damages sought by plaintiff nursing homes in this case fall within the twilight between retroactive and prospective relief, for they are prospective when viewed in relation to the Court's October 18th Order, but are retrospective when viewed in relation to any future finding by the Court that Plan 77–13 was inadequate.

The most closely analogous Supreme Court case is *Hutto v. Finney, supra.* There the district court had found that Missouri state prison conditions were unconstitutional and generally ordered the state department of corrections to make improvements. Later the court identified four particular areas in need of change. Eventually conditions improved, but some time later they deteriorated drastically. Again ordering the state to remedy the constitutional violations, the Court made a specific finding of bad faith on the part of the State and awarded plaintiffs' counsel

$20,000 in attorneys' fees for his efforts to get the state to comply with the prior orders of the Court. Before the Supreme Court, the State argued that the award of fees was prohibited by the Eleventh Amendment's bar against retroactive damages. The Court rejected that argument, holding:

The line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief. ...

In exercising their prospective powers under Ex Parte Young and Edelman v. Jordan, federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. Many of the court's most effective enforcement weapons involve financial penalties. ... Civil contempt may ... be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance.... The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.

In this case, the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt. It vindicated the District Court's authority over a recalcitrant litigant....

437 U.S. at 690–91, 98 S.Ct. at 2573–74 (citations omitted.)

It may be fairly concluded from *Hutto* that a federal court can, under certain circumstances, award damages in the nature of a civil contempt fine to compensate a plaintiff for a defendant's failure to comply with an earlier prospective order. The remaining question is whether that power is limited to situations in which the state defendant has demonstrated bad faith in its failure to comply with the Court's original order. The Supreme Court's language in

*Hutto* did not explicitly limit the court's power in this way, but the district court had expressly found bad faith and awarded the attorneys' fees on that basis.

Plaintiffs, noting the *Hutto* Court's analogy to civil contempt fines, argue that a *Hutto*-type damages award against a state is proper whenever a civil contempt fine could issue against a similarly situated private litigant and that such damages are therefore permissible even absent a showing of bad faith by the state. They cite *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), in which the Supreme Court held civil contempt sanctions could be imposed against a private defendant, despite the district court's finding that the defendants' violation of an injunction was not willful. Stated the Court:

> The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An Act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.

336 U.S. at 191, 69 S.Ct. at 499.

Even assuming *arguendo* that damages may be awarded against a state defendant whenever a similarly situated private litigant could be cited for contempt, the Court is not persuaded that the State of Florida can be required to pay damages in this case because it is doubtful whether private party could be held in contempt on the facts herein. The facts in the case at bar differ significantly from those in *McComb*. The district court decree in *McComb* required defendants to comply with provisions of the federal wage laws that were fairly specific in their requirements. As the Supreme Court put it:

> The decree ... does not ... compute the weekly and monthly amount that is due each employee under the correct construction of the Act. Nor does it contain the names of the payees. But it provides the formula by which the amounts can be simply computed.

336 U.S. at 194, 69 S.Ct. at 501.

In contrast, the Court's October 18th Order required defendants to comply with a rather vague statutory standard. They were directed to submit a reimbursement plan that was "reasonably cost related". The problem presented by Plaintiffs' position is highlighted by the history of this case, which reveals the difficulty of determining whether a medicaid reimbursement plan is "reasonably cost related." Suffice it to say that in the course of this litigation the Court has had occasion to take vast amounts of complex economic evidence directed at making such a determination, and the Court is satisfied that Defendants could not tell with reasonable certainty whether the plan they submitted complied with the standard in the absence of a ruling by the Court on the question. In such circumstances, it is not clear that even a private litigant could be fined for contempt for failure to comply, for it has been held that an order of contempt cannot issue unless the order claimed to have been violated is sufficiently specific and definite. *See, e.g., UFI Razor Blades v. District 65, etc.*, 610 F.2d 1018 (2d Cir.1979), and cases cited therein.

Furthermore, even if a private party may be held in contempt under these facts, the Court is not persuaded that *Hutto* allows a state to be fined absent a showing of bad faith. *Hutto* uses a civil contempt model to analyze when the Eleventh Amendment will allow damages against the state, but this does not mean that every time a civil contempt fine is allowable against a private party, a damages remedy is available against the state. Rather, this Court should look to the justification underlying the *Hutto* exception to the Eleventh

Amendment ban on retroactive damages, which was that an award of attorney's fees in the nature of a civil contempt fine was necessary to enforce a prospective order against a recalcitrant litigant. That justification simply does have as much strength where the prospective order is non-specific (either in its terms or because it requires compliance with a non-specific statutory duty) and the state defendant has made a good faith effort to comply.

■ For that reason, this Court holds that the Eleventh Amendment bars an award of damages against the state for failure to comply with the terms of a prior prospective order, where the state could not know with reasonable certainty what was required for full compliance with those terms, and the state has made a good faith effort to comply. The Court finds that the State could not reasonably know what was required for full compliance with the portion of its October 18th Order that directed the State to institute a "reasonably cost related" reimbursement plan. Therefore, damages for failure to comply with that portion of the Order may be awarded only upon a showing that the state acted in bad faith in proposing and instituting Plan 77–13.

Accordingly, it is

ORDERED AND ADJUDGED that the Court will conduct a hearing on the question of whether the State acted in bad faith in promulgating Plan 77–13. If Plaintiffs cannot demonstrate such bad faith, the case against the State will be dismissed.