Isabelle SIMPSON, et al.

v.

Margaret M. HECKLER, in her official capacity as Secretary of Health and Human Services, et al.

Civ. A. No. 81–2411.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1986.

Ann S. Torregrossa, Chester, Pa., Michael J. Campbell, for Isabelle Simpson.

Michael Campbell, Ann S. Torregrossa, Chester, Pa., for Jean Engle (intervener).

John G. Knorr III, Deputy Atty. Gen., John A. Kane, Harrisburg, Pa., for Dept. of Public Welfare, O'Bannon and Radke.

Joan K. Garner, Asst. U.S. Atty., Lewis K. Wise, Mary E. Goetten, Washington, D.C., for Federal defendants.

## MEMORANDUM

GILES, District Judge.

Plaintiffs Isabelle Simpson and intervenors[1] filed this action for injunctive and declaratory relief against the state and federal defendants. Plaintiffs challenge the legality of that portion of the medicaid program in Pennsylvania which sets the reimbursement rate paid to physicians who provide medical care to medicaid recipients in the state. Plaintiffs contend that the Pennsylvania medicaid program violates the federal "equal access" regulation, which requires the state agency responsible for administering the medicaid program to set sufficient reimbursement rates for physicians treating medicaid patients so that "services under the plan are available to recipients at least to the extent that

---

**1.** This court has granted leave to plaintiff to have three additional medicaid recipients intervene in this action: Jean Engle, Dorothy Phillips and Patricia Ballane. All three intervenors claim the same injury alleged by the named plaintiff—lack of adequate health care because of an insufficient number of physicians in their area willing to treat medicaid patients. All three intervenors are currently medicaid recipients.

those services are available to the general population." 42 C.F.R. § 447.204 (1985). Plaintiffs claim that the Pennsylvania reimbursement rate is so inadequate that few physicians will treat medicaid patients.

Plaintiffs request that this court: (1) certify a class pursuant to Fed.R.Civ.P. 23 that will include all persons entitled to benefits under the medicaid program; (2) declare the medicaid program illegal and invalid; (3) enjoin the federal defendant Secretary of Health and Human Services ("HHS") from approving any medicaid program in Pennsylvania which does not meet all applicable federal regulations, including the equal access regulation, and; (4) monitor the state defendants' submission of any plan which does not satisfy the equal access regulation. Federal defendant HHS seeks dismissal of the complaint for plaintiffs' lack of standing, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. HHS moves alternatively for summary judgment. HHS also opposes class certification.

I find that plaintiffs lack standing to bring this action against the federal defendant and grant the motion of HHS to dismiss the complaint. I therefore do not reach the issues of plaintiffs' failure to state a claim or lack of subject matter jurisdiction. I deny plaintiffs' motion for class certification as unnecessary and because plaintiffs fail to meet the requirements of Fed.R.Civ.P. 23(a) and 23(b)(2).

### I. *Defendant's Motion to Dismiss*

■ *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), articulates the standard for plaintiffs' standing to invoke the jurisdiction of a federal court in an action against a government agency for allegedly unlawful conduct. *Allen* restates three general, established criteria for standing:

Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of ob-

taining relief from the injury as a result of a favorable ruling too speculative? 104 S.Ct. at 3325. Those criteria operate in light of the overall purpose of a standing inquiry, which is to measure whether plaintiffs' personal stakes in the outcome warrant their invocation of federal court jurisdiction and justify the exercise of the court's remedial powers on their behalf. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975).

■ The first inquiry is whether plaintiffs allege a " 'distinct and palpable' " injury, *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206), not one which is "abstract" or "conjectural" or "hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). Plaintiffs have experienced difficulty in obtaining medical care for themselves and their families in their immediate locales; they often have been unable to obtain treatment by the physicians or facilities closest to them. Plaintiffs have suffered inconvenience and delay in receiving treatment. Further, plaintiffs have been denied a second opinion or a choice of specialists. However, plaintiffs have received successful medical treatment from other physicians or in other facilities willing to accept medicaid patients.

The equal access regulation requires only "that the state's reimbursement formula be designed to engage a sufficient number of providers to make the state's medicaid program meaningful in all respects." *DeGregorio v. O'Bannon,* 500 F.Supp. 541, 550 (E.D.Pa.1980). The reimbursement rate in itself is not a measure of compliance with the equal access regulation. The "regulation does not require rate parity for medicaid patients"; it does require "that the reimbursement rate be set sufficiently high to allow some marginal profit in servicing medicaid patients ... so as to ensure that medicaid patients have substantial access" to medical care. *Id.* Substantial access, not the reimbursement rate, satisfies the equal access regulation.

Plaintiffs have received necessary medical services. Substantial access does not guarantee medicaid patients the right to be treated by the closest physicians or facilities, nor does it give medicaid patients the right to a second opinion or choice of specialists. This is particularly true when, as here, a lack of primary health care in a recipient's geographic region contributes to the recipient's difficulty in obtaining medical care. Plaintiffs concede that a shortage of primary health care providers exists both throughout the state and in Delaware and Bucks Counties. Plaintiffs have not alleged injury sufficient to support standing against HHS.

■ The second component of standing is that the "injury must be 'fairly' traceable to the challenged action." *Allen*, 104 S.Ct. at 3325 (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)). Neither the facts alleged by plaintiffs nor the law applicable to their claims supports the conclusion that HHS's approval of the state medicaid program is the direct cause of the alleged injury, a deprivation of equal access to medical care.

It is well-settled that HHS, as the administrative agency that implements a federal law, is entitled to "substantial deference" in determining whether a state's medicaid plan complies with the applicable federal statutes and regulations. *Troutman v. Cohen*, 588 F.Supp. 590, 598 (E.D.Pa.), *aff'd* 755 F.2d 924 (3d Cir.1984). *See New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973); *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388, 393 (5th Cir.1980) (citing *Mazaleski v. Treusdell*, 562 F.2d 701, 717 n. 38 (D.C.Cir.1977) (other citations omitted)). HHS's only responsibility is to evaluate the state medicaid program for compliance. The state has "the principal responsibility for administering the [medicaid] program," including "enlisting medical service providers, and paying those providers for services rendered." *DeGregorio*, 500 F.Supp. at 545. Even assuming that plaintiffs have

suffered injury, the indirect line of causation between HHS's conduct and plaintiffs' injuries does not support standing. HHS has insufficient connection to the administration of the medicaid program to be the traceable cause of those injuries.

In fact, HHS's failure to approve the medicaid plan could have caused greater injuries than plaintiffs now claim. Medicaid is a voluntary federal-state cooperative venture. States need not participate. Participation requires that a state submit a medicaid plan to HHS, which then decides whether that plan complies with the applicable federal statutes and regulations. Had HHS not approved the state's plan, the state may not have provided any medical program to assist plaintiffs and similarly situated individuals.

Given (1) the presumption of validity accorded HHS's approval of the state plan; (2) the actual effect of HHS's decision, i.e., that plaintiffs have received medical care because of the existence of the medicaid plan that they may not have received otherwise; and (3) this court's interpretation of the equal access regulation as requiring "substantial access," not reimbursement rate parity, for medicaid patients, the link between HHS's actions and any harm suffered by plaintiffs is too attenuated to support standing.

■ The third requirement for standing is whether the injury alleged is "likely to be redressed by the requested relief." *Allen*, 104 S.Ct. at 3325. The possibility that a judicial decision adverse to the federal defendant will redress plaintiffs' alleged injuries is speculative at best. Plaintiffs request that this court declare HHS's approval of the state medicaid plan illegal and invalid and enjoin further operation of the plan as contrary to federal statutes and regulations. Plaintiffs may well suffer greater injury as the result of such a ruling. In the event of an adverse decision, HHS will either negotiate with the state to establish a conforming plan or HHS will withhold payment of federal funds to the state's program. *See Arthur C. Logan*

*Mem. Hosp. v. Toia,* 441 F.Supp. 26, 27 (S.D.N.Y.1977).

Should HHS choose to negotiate with the state, it will be the state's responsibility to decide whether it will raise its physician reimbursement rate in order to comply with the equal access regulation. If the state raises its reimbursement rate to the highest point it can while staying within the bounds of its own financial resources, and the plan still does not comply with the applicable federal statutes, then HHS's only option will be to withhold funds from the state.[2] Such withholding will severely curtail the state's ability to pay physicians who are currently willing to treat medicaid patients and will discourage additional physicians from providing medical care to such patients. Medicaid recipients would then lack adequate medical care. Furthermore, as both parties concede, there may be other reasons why physicians in Pennsylvania do not participate in medicaid aside from the reimbursement rate. A higher reimbursement rate need not lead to a corresponding increase in the number of physicians willing to treat medicaid patients. A ruling in favor of plaintiffs promises only a minimal possibility of redressing their injuries. Such speculation is insufficient to support standing.

■ Plaintiffs fail to meet any of the criteria for standing and thus their complaint is dismissed as to the federal defendant HHS.

## II. *Plaintiffs' Motion for Class Certification*

■ Both the state and federal defendants oppose plaintiffs' motion for class certification. The state defendants urge this court to deny plaintiffs' motion because it was not filed until November 20, 1981, more than five months after the complaint was filed. Defendants assert that this delay violates Rule 27(c) of the Local Rules of Civil Procedure which requires the filing of a motion for class certification within ninety days after the filing of the complaint.

Although this period may be extended on motion for good cause, plaintiffs never filed a motion for an extension. Even though plaintiffs' motion could be denied for failure to comply with Rule 27(c), I decline to do so. *See Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 272 (E.D.Pa.1975) (plaintiff's failure to submit motion for class certification within specified time period under local rules does not warrant denial of plaintiffs' motion under the circumstances). Instead, I deny the motion for class certification as unnecessary and because plaintiff is unable to meet all of the requirements for class certification delineated in Fed.R.Civ.P. 23(a) and 23(b)(2).

The Fed.R.Civ.P. 23(a) prerequisites to a class action are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Plaintiffs' proposed class does not exhibit the common questions of law or fact that Rule 23(a) requires. Plaintiffs argue that Pennsylvania's non-compliance with the equal access regulation affects all medicaid recipients because the state's reimbursement rate is insufficient to encourage physicians to accept medicaid patients. However, not all medicaid recipients in the state have encountered the same difficulties in obtaining medical care as have plaintiffs in this action. While a shortage of physicians willing to treat medicaid patients may exist in Delaware County, or in other areas, that condition is most likely not a state-wide situation. For example, urban counties have both more physicians in general and, in particular, more physicians willing to treat medicaid patients. Medicaid recipients in urban areas also have easier access to physicians by public transportation. In order to meet the commonality require-

---

**2.** The federal government pays approximately 55% of the total amount spent for medicaid assistance under a state medicaid plan. 42 U.S.C. § 1396b(a)(1)(1983).

ment, plaintiffs must demonstrate that defendants' non-compliance with the equal access regulation affects all eligible medicaid recipients. Plaintiffs' alleged injuries, taken as true, do not support the conclusion necessary for class certification that all eligible medicaid recipients are being deprived of adequate medical care. Failure to meet any one of the prerequisites of Rule 23(a) destroys the class. *See Gatter v. Cleland,* 87 F.R.D. 66, 69 (E.D.Pa.1980).

Moreover, plaintiffs seek injunctive and declaratory relief. If this court renders a decision favorable to plaintiffs, any relief will benefit automatically all eligible medicaid recipients and will thus have the purpose and effect of a class action. In that situation, certification of a class action is unnecessary and inappropriate. *See Gray v. International Bhd. of Elec. Workers,* 73 F.R.D. 638, 640 (D.D.C.1977). *See also Staten v. Housing Auth. of City of Pittsburgh,* 469 F.Supp. 1013, 1014 (W.D. Pa.1979); 3B J. Moore, Moore's Federal Practice ¶ 23.40[3] (2d ed. 1982).